Honorable John C. Coughenour

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

CECILE HANSEN, in her capacity as Chairwoman of the Duwamish Tribe, and the DUWAMISH TRIBE,

Plaintiffs,

v.

KEN SALAZAR, Secretary of the Interior; KEVIN K. WASHBURN, Assistant Secretary of the Interior for Indian Affairs, THE UNITED STATES DEPARTMENT OF THE INTERIOR, BUREAU OF INDIAN AFFAIRS, OFFICE OF FEDERAL ACKNOWLEDGMENT, and the UNITED STATES OF AMERICA,

Defendants.

No. C08-0717-JCC

SECOND DECLARATION OF RICHARD REICH

I, Richard Reich, declare as follows:

I am one of the attorneys for Amicus Muckleshoot Indian Tribe. Attached to this Declaration are true and correct copies of excerpts of the Administrative Record cited in the accompanying Amicus Muckleshoot Tribe's Memorandum in Opposition to Plaintiffs' Motion for Summary Judgment on Second and Third Causes of Action and Reply in Support of Federal Defendants' Motion for Summary Judgment.

The portions of the Administrative Record attached include relevant portions of the following documents:

SECOND DECLARATION OF RICHARD REICH – Page 1

Office of the Tribal Attorney
Muckleshoot Indian Tribe
39015 - 172nd Avenue SE
Auburn, WA 98092
(253) 939-3311

1. DUW-PFD-V010-D0138
2. PFR-APF-V012-D0014
3. PFR-HPF-V003-D0150

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct to the best of my knowledge.

Executed this 14th day of December, 2012 at Auburn, Washington.

s/ Richard Reich
Richard Reich, WSBA No. 8178

## CERTIFICATE OF SERVICE

I certify that on December 14th, 2012, I electronically filed the foregoing Second Declaration of Richard Reich, with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the attorney(s) of record for the parties in this matter.

Dated: December 14, 2012

/s Richard Reich
Richard Reich, WSBA No. 8178
Attorney for Amicus Muckleshoot Tribe

SECOND DECLARATION OF RICHARD REICH – Page 2

Office of the Tribal Attorney
Muckleshoot Indian Tribe
39015 - 172nd Avenue SE
Auburn, WA 98092
(253) 939-3311

DUW-PFD-V010-D0138



UNITED STATES
DEPARTMENT OF THE INTERIOR
OFFICE OF THE SECRETARY
WASHINGTON 25, D. C.

*Duwamish Claim*

AUG 10 1965

Dear Mr. Speaker:

Enclosed is a draft of a proposed bill "To provide for the disposition of funds appropriated to pay a judgment in favor of the Duwanish Tribe of Indians in Indian Claims Commission docket No. 109, and for other purposes."

We recommend that the bill be referred to the appropriate committees for consideration and that it be enacted.

Funds were appropriated by the Act of June 9, 1964 (78 Stat. 213), to cover the sum of $62,000.00 awarded the Duwamish Tribe in settlement of a judgment of the Indian Claims Commission in docket No. 109, for inadequate compensation for lands in Washington State and for valuable resources acquired by the United States from said Indians by the Treaty of January 22, 1855 (12 Stat. 927). The judgment funds are credited to the account of this group and draw interest at four percent per annum.

The Duwamish Indians belong to the Salishan linguistic family. The group originally inhabited the east coast of the Puget Sound area in central Washington State. Although the Duwamish were assigned by the Treaty of 1855 to the Port Madison Reservation, few apparently settled there. A number of Duwamish moved to and were allotted on the Port Madison, Muckleshoot, Lummi, Swinomish and Tulalip reservations where they have continued to live as members of these groups. Four of the reservations with which Duwamish Indians became affiliated are engaged in reservation programs which involve the development of tribally owned lands, tidelands, fishing resources, native arts and crafts and other industrial opportunities. An indeterminate number of Duwamish Indians have never affiliated with any recognized reservation group. The population of the Duwamish is thus widely scattered throughout the northwest and many have intermarried with the Canadian Salish.

An organization entitled "The Duwamish Tribal Organization of the Duwamish American Indians" presently exists, and a written constitution was drawn up on February 6, 1925. However, this organization has not been approved by the Secretary of the Interior and therefore we are not bound by its enrollment criteria. The organization has no official tribal headquarters and no reservation lands or tribal assets. This organization was formed for the principal purpose of prosecuting claims against the United States. It has also been concerned with maintaining the identity of the Duwamish Indians.

The proposed bill authorizes the Secretary of the Interior to prepare a roll of all descendants of members of the Duwamish Tribe as it existed in 1855. Of the rolls on file at the Western Washington Agency, Roblin's 1919 Schedule of Unenrolled Indians and agency allotment and census records appear to be the best sources available. However, the bill provides that other official proof of Duwamish ancestry, if approved by the Secretary, will be acceptable.

We have examined the possibility of programming; however, since we are not dealing with a tribal group but with scattered descendants having no land base or natural resources, such use of judgment monies would not be feasible. The proposed bill provides that the Secretary shall distribute per capita shares of living enrollees directly to such enrollees and gives authority to the Secretary to develop procedures for the disposition of the shares of minors or persons under legal disability. Since there is no presently existing tribal entity, the proportional shares of heirs and legatees amounting to $5.00 or less will escheat to the United States. The proposed bill also provides that in the event that the sum of money reserved by the Secretary to pay the costs of distributing the individual shares exceeds the amount actually necessary to accomplish this purpose, the money remaining shall also escheat to the United States.

The Bureau of the Budget has advised us that there is no objection to the submission of the proposed legislation from the standpoint of the Administration's program.

Sincerely yours,

Harry R. Anderson

Assistant Secretary of the Interior

Hon. John W. McCormack
Speaker of the
  House of Representatives
Washington, D. C.


Enclosure

DUWAMISH (DOCKET 109) JUDGMENT FUND
Balance as of January 4, 1965

Net Award - 14X7049  Awards of Indian Claims Commission
    Duwamish Tribe of Indians . . . . . . . . . . . . . . $62,000.00

Attorney fees . . . . . . . . . . . . . . . . . . . . . . . . . 6,200.00

Attorney expenses . . . . . . . . . . . . . . . . . . . . . . 1,565.77

Interest through December 31, 1964,
    (not yet credited)  14X7549 Interest
    and Accruals on Interest, Awards of
    Indian Claims Commission, Duwamish
    Tribe of Indians. . . . . . . . . . . . . . . . . . . .    -0-

Balance as of January 4, 1965 . . . . . . . . . . . . . . . .$54,234.23

PFR-APF-V012-D0014

Combination ~~COMPILATION~~ OF 1942 and 1979 SUQUAMISH ~~BASE~~ ROLLS

COMPARED WITH 1971 DUWAMISH JUDGMENT ROLL AND LANE REPORT

CAUSE 9213 *86-1
PLAINTIFF
EXHIBIT
NO. SU-SM-44
ADMITTED 5/10/88

025 PFR-APF-V012-D0014 Page 1 of 38

LEGEND
------------------------------------------------------------------------

Elig.   =   Eligible; means that the person indicated had a Duwamish ancestor who would have made that person eligible to be on the 1971 Duwamish Judgment Roll; these includes individuals who were not on the 1971 Duwamish Judgment Roll because they (1) died too early; (2) were born too late; or (3) failed to make application.

F       =   Father or father's (For example, FF means father's father; i.e., paternal grandfather)

M       =   Mother or mother's (For example, MM means mother's mother; i.e., maternal grandmother)

R       =   Relinquished


Parents who have no Suquamish or Duwamish ancestry are shown in brackets.

1942 and 1979 Suquamish Rolls include supplements.

Lane Report is draft report of Barbara Lane, Ph.D., "The Duwamish Indians and the Muckleshoot and Port Madison Indian Reservations."

1971 Duwamish Roll means the 1971 Duwamish Judgment Roll.

Duwamish ancestor means either the ancestor named in the Lane Report or the eligible ancestor for the Duwamish Judgment Roll.

| Name | 1070 Suquamish Roll No. | 1942 Suquamish Roll No. | Father | Mother | 1971 Duwamish Roll No. | Lane Report | Relationship to Duwamish Ancestor |
|---|---|---|---|---|---|---|---|
| NASON, Gertrude | | 115 | (Colbert Nason) | | | | GR GR GR GR-SON of LOUIS NAPOLEON |
| NICHOLS, Dustin Joseph | 820 | MM105 | (non-Indian) | Dawn Marie Rogers | M882 | | GR GR GR GR-SON of LOUIS NAPOLEON |
| NICHOLS, Lucas J. | 528 | MM105 | (non-Indian) | Dawn Marie Rogers | M882 | | GR GR-DAU of JANE GARRISON |
| OLIVER, Cecile Ann [Maxwell][Williams] | 256 | 215 | (Charles H. Oliver) | (Margaret Katherine Henry) | 815 | | |
| OLIVER, Charles, Jr. | 203 | 216 | (Charles H. Oliver) | (Margaret Katherine Henry) | Elig. | | GR GR GR-SON of JANE GARRISON |
| OSTENBERG, Damont William | 295 | M137 | | Nancy Rachel Purser | MF636 | | GR GR-SON of JOHN & NANCY SIGO |
| PARKINSON, Martin Lamon | 560 | | | (CONFIDENTIAL) | | | |
| PARSONS, Chrystal Lee | 527 | | (non-Indian) | Joyce Ann Napoleon | 727 | | GR GR-DAU of JOHN & NANCY SIGO |
| PARSONS, Laurie Ann | 529 | | (non-Indian) | Joyce Ann Napoleon | 729 | | GR-GR GR-DAU of JOHN & NANCY SIGO |
| PAUL, Louise Ida (Purser) | 493 | | (Ernie Paul) | Ethel Kitsap | | | |
| PECK, Dewayne Dennis | 400 | | (CONFIDENTIAL) | (CONFIDENTIAL) | 732 | | GR GR-SON of LOUIS NAPOLEON |
| PECK, Earl Allen (Ledbetter) | 296 | 223 | (non-Indian) | Zelia Mary Sigo | 733 | | GR GR-SON of JOHN & NANCY SIGO |
| PECK, Edna (Luedtke) | 430 | 222 | (non-Indian) | Zelia Mary Sigo | Elig. | | GR GR-DAU of JOHN & NANCY SIGO |
| PECK, Jeffrey Robert | 504 | F225 | Milo Alanson Peck, Jr. | (non-Indian) | 734 | | GR GR GR-SON of JOHN & NANCY SIGO |
| PECK, John Harold | 297 | 224 | (non-Indian) | Zelia Mary Sigo [gr-son of ncy Sigo] | Elig. | | GR GR GR-SON of JOHN & NANCY SIGO |
| PECK, Leota Ardine (Anthony) | 50 | 218 | (non-Indian) | Zelia Mary Sigo | Elig. | | GR-DAU of JOHN & NANCY SIGO |
| PECK, Linda Darlene (Immken) | 208 | F225 | Milo Alanson Peck, Jr. | (non-Indian) | 735 | | GR GR GR-DAU of JOHN & NANCY SIGO |
| PECK, Milo Alfred, III. (Seuffert) | 299 | F225 | Milo Alanson Peck, Jr. | (non-Indian) | 737 | | GR GR GR-SON of JOHN & NANCY SIGO |
| PECK, Milo Alanson, Jr. | 298 | 225 | (non-Indian) | Zelia Mary Sigo | 736 | | GR GR-SON of JOHN & NANCY SIGO |
| PECK, Paul John | 505 | F225 | Milo Alanson Peck, Jr. | (non-Indian) | 738 | | GR GR GR-SON of JOHN & NANCY SIGO |

Page 2b

PFR-HPF-V003-D0150

COMMITTEE ON INTERIOR AND INSULAR AFFAIRS

HOUSE OF REPRESENTATIVES, U. S.

OFFICE OF THE CHAIRMAN

MAY 15, 1953


QUESTIONNAIRE ON TRIBAL ORGANIZATION

of the

DUWAMISH INDIAN TRIBE ORGANIZATION
WASHINGTON


Western Washington Indian Agency

Everett, Washington

(1) Regarding Organization:
   (a) The Duwamish Tribal Council has no official tribal headquarters as they have no reservation, and they are not under the I. R. A. However, this band holds annual meetings at Renton, King County, Washington. They operate under a written constitution which is not approved by the Secretary of the Interior.
   (b) The members of this band reside throughout the northwest and they meet annually to discuss their claims problem among themselves and are all in accord in this matter, as a result there are no political factions to contend with in this organization.
   (c) Due to the fact that the population of this band is so widely scattered there are no social or other groups among these Indians.
   (d) This band has no reservation and members live under local city, county or state government.
   (e) The members of this band are self-supporting and are well aware of their responsibility for their own welfare as individuals. This organization was not formulated for the purpose of self-government, but was organized to keep alive the identity of the Duwamish Indians and to endeavor to obtain a settlement from the Government for non-fulfillment of treaty rights.
(2) Regarding Officers:
   (a) Council members are permanent and are replaced only upon death, unless otherwise disqualified by charges of misconduct made by a member or members of the organization in good standing.
   (b) No evidence of close ties in marriage in this organization, the only blood tie is that of the vice chairman and one of the councilmen, these two are brothers.

    (c) This organization has no tribal resources to lease or to assign.

    (d) No character references or other requirements are necessary for membership in the council.

(3) Regarding membership and voting:

    (a) Approximately 40% of the members of voting age vote in tribal elections.

    (b) There are approximately 237 members of voting age; there is no record available as to the number of registered voters in local county, as the members of this band reside throughout the western half of the State of Washington.

    (c) No record of adoptions on file.

    (d) The total membership amounts to approximately 389.

             107 men

             130 women

             152 children

    (e) All members of this band have fixed family names and all have fixed post office addresses.

    (f) Enrollment is a major problem with this organization and it is constantly being worked on and applications are always being prepared, accepted and reviewed, and the last roll on file at Agency headquarters is as of July 1951.

    (g) No census roll available which gives the names and relationship together with birthdates.

(4) Regarding Income and Accounts:

    (a) No taxes are assessed the members; however, adults are required to pay $1.00 per year and the children 50¢ per year as dues.

 (b) Source of income for the heads of families of this band is derived by employment in all industries in this area and is comparable to earnings of non-Indians.

 (c) The tribal organization has no income other than the dues collected from members.

 (d) The economic position of the tribal organization has not improved since 1934.

 (e) No audit of finances has ever been made.

 (f) No tribal assets.

(5) Regarding Enterprise and Organization:

 (a) The tribal organization has no source of income.

 (b) There are no organizations among tribesmen of this organization.

(6) Regarding Land Use:

 (a) This band owns no land; therefore, no leases or assignments are made.

 (b)     Do.     Do.

 (c) None.

 (d) No deficiencies with regard to land records as they own no land.

 (e) No map available as they own no land.

(7) Regarding Law and Order:

 (a) This band has no law and order code as they have no established reservation.

 (b) Domestic relations of tribesmen are handled in accordance with existing law in the community in which they reside.

 (c) Adult and child delinquencies are handled as though members of this band were non-Indian and they come under the same laws and regulations which exist in the community in which they reside.

- 3 -

    (d) The members of this band are subject to local city, county and stat laws the same as other non-Indian citizens, relative crime laws.

    (e) The religion among the Duwamish varies greatly, no particular religi drawing a greater number of the membership, but seems to be divided between the Catholic and Protestant churches.

    (f) The band has no written law and order code as they do not reside in a group or live on a reservation.

(8) Regarding Reports and Documents:

    (a) The Secretary of the organization has copies of all minutes and correspondence is addressed to the Chairman and is in turn turned over to the Secretary. The attorney contract is on file at Agency Headquarters, as is all correspondence addressed to the organization. No complete file of minutes are on file in the Agency headquarters.

    (b) The tribal council has all copies of minutes and correspondence addressed to it in the custody of the Secretary. The tribal roll is also in the custody of the Secretary.

    (c) The records, with the exception of enrollment forms, are not voluminous and the only deficiency would be the preservation and protection of records by the Council against loss or destruction by fire.

    (d) No birth, marriage or death records are maintained by this band.

(9) Regarding Removal of Indian Bureau Supervision:

    (a) The general attitude towards removal of Bureau Supervision is against removal; this band actively participated in the Point Elliott Treaty of January 22, 1855, and feel they have certain rights under this treaty which have not been fulfilled and are

- 4 -

against withdrawal of Federal supervision and control unless a satisfactory settlement is made to them for non-fulfillment of treaty rights.

(b) The majority of this band who are not enrolled or live on a reservation, some of which own non-Indian land, already have assumed full citizenship and pay taxes the same as non-Indians; however, the portion that are decendants of the Duwamish, who settled on Indian Reservations and who have inherited restricted lands, do not believe that they should be required to pay taxes on their lands.

(c) No obstacle with the landless and unenrolled members of this band, other than the pending suit against the Government which is now before the Indian Claims Commission, to members who have inherited restricted lands the status of the land will be an obstacle.

(d) A bill for emancipation of this band would have to contend mainly with the mutual termination of the Point Elliott Treaty of January 22, 1855.

(10) Reappraisal of Factors:

(a) Under the above cited Treaty the Duwamish were entitled to allotments, the majority preferring to remain in their accustomed habitat which was the area in the vicinity of the Duwamish River near Seattle and Renton, Washington. The group that remained received very little or no benefits from the treaty in which their tribe actively participated.

(b) The Duwamish, together with other allied subordinate tribes who participated in the Point Elliott Treaty have continually attempted

- 5 -

to sue the Government for non-fulfillment of treaty obligations, in August 21, 1926, under Attorney A. E. Griffin, deceased, had presented the Duwamish, et al case before the Court of Claims of the United States, which was unfavorably decided June 4, 1934. Since this decision the Duwamish have constantly had it in mind to reopen or appeal this case. Under the provisions of the Indian Claims Commission, the Duwamish now have in effect an attorney contract with Frederick W. Post of Seattle, Washington. This contract was approved November 13, 1950, and will be in effect for 5 years from the date of approval.

(c) While there are no actual records available of assimilation of this group of Indians, it can be safely estimated that approximately 60 to 80 percent of the total membership are less than one-half degree Indian blood. The necessity that this group reside with and work with non-Indians, as they have no reservation, will result in 100% assimilation.

*Raymond A. Bitney*
SUPERINTENDENT

- 6 -

No tribal resoltions or ordinances have been submitted to the Superintendent by the tribe since 1951.

No tribal resolutions or ordinances have been submitted by the tribe since 1951 for transmittal to the Secretary of the Interior

COPY

National Archives - Pacific NW Region
6125 Sand Point Way, NE
Seattle, WA 98115
Record Group NO. 25
Additional Information BIA, WWIA
Bx. 16, Fdr., Duwamish
Tribal Organization