THE HONORABLE JOHN C. COUGHENOUR

1

2

3

4

5

6

7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

8

9  CECILE HANSEN, in her capacity as          CASE NO. C08-0717-JCC
   Chairwoman of the Duwamish Tribe and
10  the DUWAMISH TRIBE,                        ORDER GRANTING PLAINTIFFS'
                                              MOTION FOR SUMMARY
11                                            JUDGMENT ON FIRST CAUSE OF
                    Plaintiffs,               ACTION
12
         v.
13
14  KENNETH LEE SALAZAR, Secretary of
   the Interior; KEVIN K. WASHBURN,[1]
15  Assistant Secretary of the Interior for
   Indian Affairs; UNITED STATES
16  DEPARTMENT OF THE INTERIOR;
   BUREAU OF INDIAN AFFAIRS;
17  OFFICE OF FEDERAL
   ACKNOWLEDGMENT; and
18  UNITED STATES OF AMERICA
19                  Defendants.

20

21         This matter comes before the Court on Plaintiffs' motion for summary judgment on their

22  first cause of action (Dkt. No. 68), Defendants' cross-motion for summary judgment (Dkt.

23  No.76), and Plaintiffs' motion for summary judgment on their second and third causes of action

24  _____

25         [1] Secretary Kenneth Salazar is substituted for former Secretary Dirk Kempthorne and
   Assistant Secretary for Indian Affairs Kevin K. Washburn is substituted for former Assistant
26  Secretary for Indian Affairs Carl J. Artman. *See* Fed. R. Civ. P. 25(d).

ORDER GRANTING PLAINTIFFS' MOTION FOR
SUMMARY JUDGMENT ON FIRST CAUSE OF
ACTION
PAGE - 1

(Dkt. No. 96). Plaintiffs allege that Defendants' denial of Plaintiffs' petition for federal acknowledgment as an Indian tribe violated the Administrative Procedure Act and Plaintiffs' constitutional rights. Having thoroughly considered the parties' and amicus' briefing and the relevant record, the Court finds oral argument unnecessary and hereby GRANTS Plaintiffs' motion for summary judgment on their first cause of action (Dkt. No. 68) for the reasons explained herein. The Court DENIES the remaining two motions (Dkt. Nos. 76 and 96) as moot.

## I.    BACKGROUND

### A.    Federal Acknowledgment of Indian Tribes

Indian tribes that are "acknowledged" by the federal government enjoy numerous rights and privileges that are unavailable to other Indian groups. Among the rights and privileges reserved for federally acknowledged tribes are "limited sovereign immunity, powers of self-government . . . and the right to apply for a number of federal services." *Kahawaiolaa v. Norton*, 386 F.3d 1271, 1273 (9th Cir. 2004). Federal acknowledgment of an Indian tribe "is a prerequisite to the protection, services, and benefits of the Federal government" and "the immunities and privileges available to other federally acknowledged Indian tribes by virtue of their government-to-government relationship with the United States as well as the responsibilities, powers, limitations and obligations of such tribes." 25 C.F.R. § 83.2.[2]

"[P]rior to the late 1970's the federal government recognized American Indian tribes on a case-by-case basis." *Kahawaiolaa*, 386 F.3d at 1273. In 1978, the Department of the Interior ("Department") promulgated regulations establishing a "uniform procedure for acknowledging American Indian Tribes." *Id.* (internal quotation marks omitted). The Department's regulations set forth mandatory criteria for acknowledgment. 25 C.F.R. § 83.7 (1982). They also set forth the procedures for processing petitions, which include: (1) a preliminary review of the petition and issuance to the petitioner of a notice of "obvious deficiencies" in the petition; (2) placement of

---

[2] Citations to the Code of Federal Regulations are to the current code, unless an earlier date is indicated.

ORDER GRANTING PLAINTIFFS' MOTION FOR
SUMMARY JUDGMENT ON FIRST CAUSE OF
ACTION
PAGE - 2

the petition on "active consideration" after the petitioner has responded to the "obvious deficiencies" letter; (3) issuance of a proposed finding and publication of a summary thereof in the federal register; (4) an opportunity for "any person" opposed to the proposed finding to present "factual and legal arguments and evidence to rebut the evidence relied upon"; and (5) issuance of a final determination and publication of a summary thereof in the federal register. 25 C.F.R. § 83.9 (1982).

Under the 1978 regulations, the mandatory criteria for federal acknowledgment are: (a) the group has been identified as an American Indian entity on a substantially continuous basis from historical times to the present, (b) a substantial portion of the group inhabits a distinct area or lives in a community viewed as American Indian and distinct from other populations in the area, (c) the group has maintained tribal political influence or other authority over its members as an autonomous entity from historical times until the present, (d) the group has a governing document, (e) the group's membership is composed of individuals who descend from a historical Indian tribe, (f) the group's membership is composed of persons who are not members of an acknowledged tribe, and (g) the group's status as a tribe has not been terminated or otherwise precluded by congressional legislation. 25 C.F.R. § 83.7 (1982).

In 1994, the Department promulgated revised acknowledgment regulations. *See* Procedures for Establishing that an American Indian Group Exists as an Indian Tribe, 59 Fed. Reg. 9280 (Feb. 25, 1994) (codified at 25 C.F.R. § 83). The procedures for processing a petition are substantially the same under the 1978 and 1994 regulations. *Compare* 25 C.F.R. § 83.9 (1982) *with* 25 C.F.R. § 83.10. The 1994 regulations provide for petitioning groups to seek reconsideration of a final determination before the Interior Board of Indian Appeals (IBIA) and the Secretary of the Interior. 25 C.F.R. § 83.11.

The Department revised its regulations "in response to issues raised by diverse parties concerning the interpretation of the regulations and administration of the review process." 59 Fed. Reg. at 9280. Groups with petitions under active consideration when the 1994 regulations

1   were adopted were permitted to choose whether to proceed under the 1978 regulations or the

2   1994 regulations. 25 C.F.R. § 83.3(g). According to the Department's regulation, "[t]his choice

3   must be made by April 26, 1994." *Id.*

4           The 1994 regulations permit petitioners who present "substantial evidence of

5   unambiguous [f]ederal acknowledgment" to proceed under a modified set of criteria. 25 C.F.R.

6   § 83.8. Petitioners who demonstrate previous federal acknowledgment need only show

7   identification as an American Indian entity on a substantially continuous basis under criterion

8   (a), "since the point of last Federal acknowledgment." *Id.* § 83.8(d)(1). A group must also show

9   that it has been identified "as the same tribal entity that was previously acknowledged or as a

10  portion that has evolved from that entity." *Id.* Under criterion (b), a previously-acknowledged

11  group must show that it is a distinct community at present but "need not provide evidence to

12  demonstrate existence as a community historically." *Id.* § 83.8(d)(2). Finally, under criterion (c),

13  the group need only "demonstrate that political influence or authority is exercised within the

14  group at present." *Id.* § 83.8(d)(3). In contrast, the 1978 regulations "made no distinction

15  between tribes that had been previously . . . acknowledged and those that had never been

16  federally acknowledged." *Muwekma Ohlone Tribe v. Kempthorne*, 452 F. Supp. 2d 105, 109

17  (D.D.C. 2006).

18          The Department has consistently maintained that the final determination on a particular

19  petition would be the same regardless of whether the petition was evaluated under the 1978 or

20  1994 regulations. According to the notice of the adoption of the revised rules published in the

21  Federal Register, "[n]one of the changes made in these final regulations will result in the

22  acknowledgment of petitions which would not have been acknowledged under the previously

23  effective acknowledgment regulations." 59 Fed. Reg. at 9280. That same notice, however, states

24  that "[i]n some circumstances, the burden of evidence to be provided is reduced" under the 1994

25  regulations. *Id.*; *see also Muwekma Ohlone Tribe v. Salazar*, No. 11-5328, --- F.3d ---, 2013 WL

26  765009, at *2 (D.C. Cir. Mar. 1, 2013) ("Section 83.8(d) relaxes section 83.7's first three criteria

1  for a group that was once recognized.")

2        Despite the adoption of the revised acknowledgment criteria in 1994, the

3  acknowledgment process has continued to draw "considerable criticism primarily focused on the

4  fact that the process takes too much time, is costly, and produces inconsistent results." *Cohen's*

5  *Handbook of Federal Indian Law*, § 3.02[7][a] at 159 (Nell Jessup Newton, ed., 2012). The

6  General Accounting Office[3] issued a report at the request of Congress members, which

7  concluded that lack of "clear and transparent explanations" for acknowledgment decisions has

8  raised doubts about the basis for them. U.S. Gen. Accounting Office, Report to Cong.

9  Requesters, Indian Issues: Improvements Needed in Tribal Recognition Process, GAO-02-49 at

10  14, 19 (Nov. 2001). As a federal appeals court has said, the Department processes petitions at a

11  "glacial" pace. *Mashpee Wampanoag Tribal Council, Inc. v. Norton*, 336 F.3d 1094, 1097 (D.C.

12  Cir. 2003). The Department's handling of Plaintiff Duwamish Tribe's[4] petition reflects that pace.

13  The Duwamish first sought federal acknowledgment before the 1978 final regulations took

14  effect. (Dkt. No. 77, McCune Decl. Ex. M, ACR-PFD-V001-D0225.)[5] The Department did not

15  issue a Final Determination on the Duwamish Petition until September 25, 2001—more than

16  twenty years after the Duwamish first sought acknowledgment.

17      **B.  Procedural History**

18        After the 1978 regulations were adopted, the Department sent the Duwamish a letter and

19  returned their previously-filed petition for acknowledgment in order to allow the Duwamish to

20  _____

21      [3] The General Accounting Office is now known as the Government Accountability
22  Office.

    [4] The Court's reference to the "Duwamish Tribe" or the "Duwamish" is not a comment
23  on the merits of Plaintiffs' petition for acknowledgment. The Court simply refers to the party as
it has identified itself. When describing the Department's decisions in this matter, the Court
24  refers to Plaintiff Duwamish Tribe as the "Duwamish Tribal Organization," as the Department
did in its decisions below.

25      [5] For ease of reference, the Court includes citations to both the document numbers on the
26  Court's electronic docket and the agency's document identifiers. Page numbers for documents in
the administrative record refer to those immediately following the agency's document identifier.

1   "review, revise or supplement" the petition in light of the newly adopted regulations. (Dkt. No.

2   77, McCune Decl., Ex. M, ACR-PFD-V001-D0225.) The Duwamish submitted a documented

3   petition in 1987 and a revised petition in 1989. (Dkt. No. 77, McCune Decl., Ex. R, DUW-PFD-

4   V001-D0001; McCune Decl., Ex. C, ADD-PFD-V001-D0006 at 14.) The Department's Branch

5   of Acknowledgment and Research ("BAR")[6] sent the Duwamish a technical assistance letter

6   documenting obvious deficiencies in the documented petition in April of 1990. (McCune Decl.,

7   Ex. L, ACR-PFD-V001-D0082.) After the 1994 regulations were adopted and before the April

8   25, 1994 deadline for making an election, the Duwamish sent to the Department a letter electing

9   to have its petition evaluated under the 1978 regulations. (Dkt. No. 77-11, McCune Decl., Ex. K,

10   ACR-PFD-V001-D0053 at 1.)

11        The Assistant Secretary for Indian Affairs issued a Proposed Finding against

12   acknowledgment on June 18, 1996. (Dkt. No. 77-3, McCune Decl., Ex. C, ADD-PFD-V001-

13   D0001 ("PF").) Notice of the Proposed Finding was published in the Federal Register on June

14   28, 1996. 61 Fed. Reg. 33762. The period for comment on the Proposed Finding was repeatedly

15   extended at the request of the Duwamish. (Dkt. No. 77-1, McCune Decl., Ex. A, ADD-FDD-

16   V001-D0001 at 9 ("FD").) It closed in March 1998. *Id.*

17        Late in the day on January 19, 2001, the last day of President Bill Clinton's

18   administration, then-Acting Assistant Secretary for Indian Affairs Michael Anderson made hand-

19   written edits on a Final Determination acknowledging the Duwamish ("Anderson Decision").

20   (Dkt. No. 77-10, McCune Decl., Ex. H, ACR-FDD-V002-D0085.) The Anderson Decision

21   considered the Duwamish petition under both the 1978 and 1994 regulations and concluded that

22   the Treaty of Point Elliot and numerous federal statutes were evidence of unambiguous prior

23   federal acknowledgement of the Duwamish. (Dkt. No. 77-10, McCune Decl., Ex. H, ACR-FDD-

24   V002-D0085 at 23–24.) The Anderson Decision relied heavily on the significance of prior

25   _____

26        [6] BAR is now known as the Office of Federal Acknowledgment ("OFA").

1  acknowledgment. (*See, e.g.*, Dkt. No. 77-10, McCune Decl., Ex. H, ACR-FDD-V002-D0085 at

2  24.) BAR staff wrote a memo stating that they had prepared a draft decision declining to

3  acknowledge the Duwamish and that BAR did not agree with the Anderson Decision. (Dkt. No.

4  77-10, McCune Decl., Ex. G, ACR-FDD-V002-D0083.)

5       Anderson wrote and signed a memo to BAR staff directing them to incorporate his hand-

6  written edits and prepare a final document. (Dkt. No. 77-11, McCune Decl., Ex. P, ACR-RFR-

7  V001-D0060 at 22.) The memo states: "Because your office is closed at this time, I have signed

8  the Approval Statement and dated it. When you have [incorporated my edits] attach the final

9  decision to the Approval Statement." (*Id.*) Evidently, Anderson did not in fact sign the Approval

10  Statement that evening. Although the Anderson Decision is signed and dated January 19, 2001,

11  Anderson apparently went back to the Department and signed the decision on Monday, January

12  22, 2001. (Dkt. No. 77-11, McCune Decl., Ex. O, ACR-RFR-V001-D0043 at 8.) Before leaving

13  the office on January 19, Anderson called Plaintiff Cecile Hansen and told her that the

14  Duwamish had been acknowledged.

15       On Saturday, January 20, 2001, President George W. Bush took office. His Chief of Staff

16  wrote a memo to all federal agencies instructing them not to send anything substantive to the

17  Federal Register for publication until it had been reviewed by a Bush administration appointee

18  and to withdraw anything already sent to the Federal Register but not yet published. (Dkt. No.

19  77-12, McCune Decl., Ex. T, FDR-HFD-V001-D0005.) On January 25, 2001, the BIA informed

20  Plaintiff Hansen that the Final Determination on the Duwamish petition would be held "in

21  accordance with the Executive memorandum." (Dkt. No. 77-11, McCune Decl., Ex. J, ACR-

22  FDD-V002-D0137 at 1.)

23       Months later, on September 25, 2001, Assistant Secretary for Indian Affairs Neal

24  McCaleb signed a Final Determination declining to acknowledge the Duwamish. (FD at 1.) The

25  Final Determination considered the Duwamish petition only under the 1978 regulations. The

26  Notice of the Final Determination against acknowledgment published in the Federal Register

1    stated:

2
3               On January 19, 2001, the Acting Assistant Secretary made a preliminary
          finding that the [Duwamish Tribal Organization] met the seven mandatory criteria
4          for acknowledgment and therefore was entitled to be acknowledged . . . .
          However, the Acting Assistant Secretary neither signed his recommended final
5          determination nor the required three copies of the Federal Register notice before
          the change in the Administration . . . . Until the required notice of the final
6          determination is published in the Federal Register, there is no completed agency
          action.
7               Because the agency action was still pending within the Department when
          the new Administration took office, this Administration became responsible for
8          issuing a final determination which is legally sufficient. As part of that
          responsibility, it was incumbent upon the new Administration to review the
9          decision making documents. This review was also in accordance with the White
          House memorandum of January 20, 2001, relating to pending matters.
10

11

12   Final Determination Against Federal Acknowledgement of the Duwamish Tribal Organization,

13   66 Fed. Reg. 49966, 49966 (Oct. 1, 2001).

14        The Duwamish petitioned the IBIA for review of the Final Determination, essentially

15   arguing that the Anderson Decision should be reinstated. (Dkt. No. 77-12, McCune Decl., Ex. V,

16   IBA-RFR-V001-D0008.) The IBIA concluded that it lacked jurisdiction over those claims and

17   referred them to the Secretary of the Interior. (Dkt. No. 77-12, McCune Decl., Ex. U, IBA-RFR-

18   V001-D0004.) Secretary Gale Norton then declined to request that the Assistant Secretary for

19   Indian Affairs reconsider the Final Determination against acknowledgment. (Dkt. No. 77-11,

20   McCune Decl., Ex. N, ACR-RFR-V001-D0001.)

21        This suit followed. The Duwamish claim that the Department violated the Administrative

22   Procedure Act ("APA") and their equal protection rights by failing to evaluate the Duwamish

23   petition under both the 1994 and 1978 regulations, despite having evaluated the similarly-

24   situated Chinook Indian Tribe's petition under both sets of regulations. (Dkt. No. 49 at 27–28.)

25   The Duwamish ask the Court to remand their petition to the Department with instructions to

26   consider the petition under the 1994 regulations. (Dkt. No. 49 at 32.) The Duwamish make two

ORDER GRANTING PLAINTIFFS' MOTION FOR
SUMMARY JUDGMENT ON FIRST CAUSE OF
ACTION
PAGE - 8

1   additional claims for violations of the APA and the United States Constitution (Dkt. No. 49 at

2   29–31), but given the Court's resolution of the first claim, it need not address the other two.

3   **C.  Brief History of Duwamish in Puget Sound**

4   To put the Department's Final Determination in context, the Court begins with a brief

5   history of the Puget Sound region. There is no dispute that the historic Duwamish Indians were

6   the "aboriginal occupants of the territory at the river outlet at the southern end of Lake

7   Washington and along the extent of the Duwamish River system—the Duwamish, Black, and

8   Cedar Rivers." (PF at 7.) In other words, the Duwamish people lived on the lands that are now

9   called south Seattle, Renton, and Kent, Washington.

10  The United States Government negotiated the Treaty of Point Elliot with "the Duwamish

11  and 21 'allied tribes' in 1855." (*Id.*); Treaty of Point Elliot, Jan. 22, 1855, 12 Stat. 927. The

12  Government negotiated a series of treaties with the tribes of the Puget Sound region in the mid-

13  nineteenth century under which the tribes ceded to the United States nearly all of their territory in

14  Western Washington. *See, e.g.*, Treaty of Medicine Creek, Dec. 26, 1854, 10 Stat. 1132; Treaty

15  of Point Elliot, Jan. 22, 1855, 12 Stat. 927. The treaties provided for the establishment of

16  reservations in the Puget Sound region, including those that are now known as the Lummi

17  Reservation, the Tulalip Reservation, the Muckleshoot Reservation, the Port Madison

18  Reservation, and the Puyallup Reservation. The tribes also reserved off-reservation fishing rights

19  under the treaties. *See United States v. Washington*, 384 F. Supp. 312 (W.D. Wash. 1974).

20  **D.  The Merits of the Department's Decision**

21  The Department's Final Determination concludes that the Duwamish failed to meet

22  mandatory criteria (a), (b), and (c) under the 1978 regulations. The Final Determination relies on

23  the Proposed Finding and is to be read "together with [it]." (FD at 8.) Because Plaintiffs' motion

24  for summary judgment does not require the Court to evaluate whether the Department's Final

25  Determination is supported by substantial evidence, the Court provides only a brief summary of

26  that decision.

1    The Department's Final Determination concludes that the Duwamish did not satisfy
2    criterion (a) because "the available evidence is not sufficient to show outside identification of a
3    historical Duwamish tribe or band antecedent to the petitioner from 1855 to the present, on a
4    substantially continuous basis." (FD at 24.) Essentially, the Department concluded that the
5    Duwamish who petitioned for federal acknowledgment were a group of individuals descended
6    from the historic Duwamish tribe but were not "the historical Duwamish tribe or a modern
7    reorganization of the historical Duwamish tribe." (FD at 22.) The Department emphasized the
8    gap in external identifications of the Duwamish between 1900 and 1939 as well as its conclusion
9    that the Duwamish Tribal Organization was a "new" group founded in 1925 for the purpose of
10   pursuing monetary claims against the Government.

11   The Department concluded that the Duwamish failed to satisfy criterion (b) because they
12   do not exist as a distinct Indian community, despite being descended from the historic Duwamish
13   tribe. (FD at 51.) The Final Determination explains that because the Duwamish cannot point to a
14   geographic community that is distinctly Duwamish, they needed to provide evidence of
15   community "such as interaction, social networks, conflict and resolution of conflict, cooperative
16   relationships, and similar activities." (FD at 43.) The Final Determination says that there is no
17   evidence of extensive intermarriage among the Duwamish and insufficient evidence of organized
18   social or cultural activities.

19   The Final Determination concludes that the Duwamish failed to satisfy criterion (c)
20   because they did not provide sufficient evidence that "the petitioner has maintained tribal
21   political influence or other authority over its members as an autonomous entity through history
22   until the present." (FD at 71.) It explains that the Duwamish Tribal Organization "has limited its
23   activities to pursuing claims for its dues-paying members and that the organization was run by a
24   tiny fraction of the membership." (FD at 70.) The Proposed Finding explains that the minutes for
25   annual meetings, which are available from about 1939, indicated that the organization "played a
26   very limited role in the lives of its members." (PF at 21.)

ORDER GRANTING PLAINTIFFS' MOTION FOR
SUMMARY JUDGMENT ON FIRST CAUSE OF
ACTION
PAGE - 10

1    The Department found that the Duwamish satisfied criteria (d) through (g): They

2    provided their current governing document; approximately ninety-nine percent of the

3    Duwamish's members are descended from the historical Duwamish tribe; there was no evidence

4    that a significant portion of the Duwamish's members belong to any other federally recognized

5    tribe; and Congress has not expressly terminated the federal relationship with the Duwamish.

6    (FD at 71, 73–74.)

7    **II.    DISCUSSION**

8        **A.    Summary Judgment Standard**

9        Summary judgment is appropriate when "there is no genuine issue as to any material fact

10   and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Anderson v.*

11   *Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). Where a plaintiff seeks judicial review under the

12   APA of a final administrative action, the reviewing court does not find facts. *See Nw. Motorcycle*

13   *Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1472 (9th Cir. 1994). "Rather, the court's review is

14   limited to the administrative record" and to determining whether it can sustain the agency's

15   decision. *Id.*; *see also Camp v. Pitts*, 411 U.S.138, 142–43 (1973) (if agency's decision cannot be

16   sustained, court must remand to agency for further consideration).

17       **B.    Arbitrary and Capricious Review**

18       "The decisions of the Department of the Interior in recognizing Indian tribes through the

19   acknowledgment process are subject to normal judicial review under the Administrative

20   Procedure Act." *Kahawaiolaa*, 386 F.3d at 1276. Under the APA, a court may set aside an

21   agency decision only if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in

22   accordance with law." 5 U.S.C. § 706(2)(A). An agency decision is "arbitrary and capricious" if

23   the agency (1) relied on a factor that Congress did not intend it to consider, (2) failed to consider

24   an important factor or aspect of the problem, (3) failed to articulate a rational connection

25   between the facts found and the conclusions made, (4) supported the decision with a rationale

26   that runs counter to the evidence or is so implausible that it could not be ascribed to a difference

1    in view or the product of agency expertise, or (5) made a clear error in judgment. *Cal. Energy*

2    *Comm'n v. Dep't of Energy*, 585 F.3d 1143, 1150–51 (9th Cir. 2009). An agency decision will be

3    upheld "only on the basis of the reasoning articulated therein." *Id.* at 1150.

4         A reviewing court may not reweigh the evidence before the agency. *See Lockheed*

5    *Shipbuilding v. Director, OWCP*, 951 F.2d 1143, 1146 (9th Cir. 1991). The agency's factual

6    findings are reviewed for substantial evidence and will not be disturbed unless the evidence

7    presented would compel a reasonable finder of fact to reach a contrary result. *Herrera v. U.S.*

8    *Citizenship & Immigration Servs.*, 571 F.3d 881, 885 (9th Cir. 2009). If the evidence contained

9    in the administrative record is susceptible to more than one rational interpretation, a reviewing

10    court may not substitute its judgment for that of the agency. *Hensala v. Dep't of Air Force*, 343

11    F.3d 951, 955–56 (9th Cir. 2003).

12      **C.**      **Plaintiffs' First Cause of Action**

13         The Duwamish argue that their petition was similarly situated to the Chinook Indian

14    Tribe's petition because both groups made a written election to proceed under the under the 1978

15    regulations and received a proposed finding against acknowledgment under those regulations.

16    They argue that the Department treated the two similarly-situated petitions differently by

17    applying both the 1978 and 1994 regulations in its final determination on the Chinook petition

18    but applying only the 1978 regulations in its final determination on the Duwamish petition.

19         The APA requires an agency to treat similarly-situated parties alike or provide an

20    adequate explanation to justify treating them differently. *See Burlington N. & Santa Fe Ry. v.*

21    *Surface Transp. Bd.*, 403 F.3d 771, 776 (D.C. Cir. 2005). "Agency action is arbitrary and

22    capricious if the agency offers insufficient reasons for treating similar situations differently."

23    *Muwekma Ohlone Tribe*, --- F.3d ---, 2013 WL 765009, at *5 (internal quotation marks omitted)

24    (quoting *Cnty. of Los Angeles v. Shalala*, 192 F.3d 1005, 1022 (D.C. Cir. 1992)). "A

25    fundamental norm of administrative procedure requires an agency to treat like cases alike. If the

26    agency makes an exception in one case, then it must either make an exception in similar cases or

1  point to a relevant distinction between the two cases." *Westar Energy, Inc. v. FERC*, 473 F.3d

2  1239, 1241 (D.C. Cir. 2007).

3        Both the Duwamish and the Chinook Indian Tribe elected in writing to have their

4  petitions considered under the 1978 regulations, as provided for in 25 C.F.R. § 83.3(g). After the

5  Department issued its Proposed Finding against acknowledging the Chinook, the Chinook asked

6  the agency to consider their petition under 1994 rules, but withdrew that request before it was

7  answered. Chinook Indian Tribe / Chinook Nation Summary Under the Criteria and Evidence for

8  Final Determination For Federal Acknowledgment at 2 (Jan. 3, 2001) ("Chinook FD"), *available*

9  *at* http://www.bia.gov/cs/groups/xofa/documents/text/idc-001483.pdf. After the Department

10  issued a proposed finding against acknowledgment, the Chinook made a second request for

11  consideration under the 1994 rules. *Id.* The BIA responded by letter and concluded that it could

12  not consider the Chinook petition under the 1994 regulations. *Id.* The Assistant Secretary agreed.

13  *Id.* Nonetheless, the Assistant Secretary's Final Determination on the Chinook petition—which

14  was issued before the Duwamish Final Determination—evaluated it under both sets of

15  regulations. The Reconsidered Final Determination on the Chinook petition, issued after the

16  Duwamish Final Determination, does the same.

17        In its response to Plaintiffs' motion, the Department argues that the Chinook requests for

18  consideration under the 1994 regulations explain why the Department treated the Chinook and

19  Duwamish petitions differently. But the Final Determination Against Acknowledgment of the

20  Duwamish makes absolutely no reference to the Chinook decision and does not give that reason,

21  or any other, for the different treatment of the two petitions. The Court cannot rely on the

22  Department's *post hoc* explanations for its action. *See Cal. Energy Comm'n*, 585 F.3d at 1150

23  (courts "will uphold an agency decision only on the basis of the reasoning articulated therein").

24        Moreover, the Department's regulations set April 26, 1994 as the relevant deadline for

25  making an election to proceed under one set of regulations or the other. 25 C.F.R. § 83.3(g). The

26  Chinook Reconsidered Final Determination explains that the Assistant Secretary had "authority

1   to review the Chinook petition under the 1994 revised acknowledgment guidelines, even though

2   the Chinook did not request that consideration *within the regulatory time frame*." Reconsidered

3   Final Determination Against Acknowledgment of the Chinook Indian Tribe / Chinook Nation at

4   3 (July 5, 2002) ("Chinook RFD") (emphasis added), *available at*

5   http://www.bia.gov/cs/groups/xofa/documents/text/idc-001489.pdf. It is therefore questionable

6   whether the Chinook's requests for consideration under the 1994 guidelines, after the regulatory

7   deadline had passed, provide a valid basis for treating their petition differently from the

8   Duwamish petition.

9        In both the Chinook Final Determination and Reconsidered Final Determination, the

10  Department explained that it was making an exception to the election requirement set forth in 25

11  C.F.R. § 83.3(g). In the Reconsidered Final Determination, the Assistant Secretary for Indian

12  Affairs wrote:

13        I find under 25 C.F.R. § 1.2 that based on the record before me, it is in the best
          interests of the Indians, both the petitioner and the Quinault Nation, to proceed
14        with an evaluation of the petition in a reconsidered determination under both the
          1978 and 1994 regulations. This approach addresses the concerns of both the
15        Chinook and the Quinault by providing clear analysis of how the issues referred
          to me on reconsideration would be addressed under either set of regulations.
16
17  Chinook RFD at 18. The Assistant Secretary similarly explained in the Chinook Final

18  Determination—which was issued before the Duwamish Final Determination—that "[b]arring

19  prejudice to the petitioner, the Assistant Secretary is vested with discretion and may apply [the

20  1994] regulations." Chinook FD at 13.

21        Section 1.2 of Title 25 of the Code of Federal Regulations permits the Secretary to

22  "waive or make exceptions" to the Department's regulations "in all cases where permitted by law

23  and the Secretary finds that such waiver or exception is in the best interest of the Indians." The

24  Assistant Sectary made an exception to the regulations when he considered the Chinook petition

25  under both sets of regulations despite the Chinook's formal election to be evaluated under the

26  1978 regulations. The Assistant Secretary did not make that exception in the case of the

ORDER GRANTING PLAINTIFFS' MOTION FOR
SUMMARY JUDGMENT ON FIRST CAUSE OF
ACTION
PAGE - 14

1    Duwamish or explain why he was treating the two petitions differently, as required by the

2    fundamental norms of administrative procedure. *See Westar Energy*, 473 F.3d at 1241. The

3    Department's failure to consider the Duwamish petition under both sets of rules, or explain why

4    the Duwamish petition was being treated differently than the Chinook petition, was arbitrary and

5    capricious.

6        The Department makes three arguments in opposition to the Duwamish's motion for

7    summary judgment on their first cause of action. First, the Department asserts that the Duwamish

8    and Chinook cases are not similar because the Duwamish did not expressly ask for consideration

9    under the 1994 regulations before the Duwamish Final Determination was issued. The Court has

10   already addressed this argument. As previously explained, the Court finds that this *post hoc*

11   explanation does not address the Department's decision to make an exception to the regulatory

12   requirement that petitioners make an election to be considered under one set of regulations or the

13   other before April 26, 1994. The Duwamish and the Chinook made the same formal election for

14   consideration under the 1978 guidelines but the Chinook received the benefit of consideration

15   under both sets of guidelines and the Duwamish did not.

16       Second, the Department argues that remand would be futile because the Department's

17   final determination of the Duwamish petition would be the same under either version of the

18   rules. The Court does not agree. "If a reviewing court agrees that the agency misinterpreted the

19   law, it will set aside the agency's action and remand the case—even though the agency (like a

20   new jury after a mistrial) might later, in the exercise of its lawful discretion, reach the same

21   result for a different reason." *FEC v. Akins*, 524 U.S. 11, 25 (1998) (citing *SEC v. Chenery*

22   *Corp.*, 318 U.S. 80 (1943)). In light of the fact that Acting Assistant Secretary Anderson

23   concluded that the Duwamish should be acknowledged when he considered their petition under

24   both sets of regulations, it is at least possible that application of the 1994 regulations would

25   result in a different decision.

26       Moreover, even if the Department's resolution of the Duwamish petition under the 1994

1   regulations is the same as its determination under the 1978 regulations, the Duwamish will have

2   received the benefit of a more transparent decision making process. After waiting more than

3   twenty years for a decision as significant as whether their group qualifies for federal

4   acknowledgment as an Indian tribe, Plaintiffs should not be left to wonder why one

5   administration thought their petition should be considered under both sets of rules, but a second

6   did not. In the absence of an explanation, the Department's decision can only appear arbitrary.

7   This is particularly so when one considers that of the fifteen petitioners the Department has

8   declined to acknowledge since the 1994 regulations were adopted, the Duwamish are the only

9   group whose petition was not considered under those regulations. *See* OFA, Acknowledgment

10  Decision Compilation List: Petitions Resolved by DOI, *available at*

11  http://www.bia.gov/WhoWeAre/AS-IA/OFA/ADCList/PetitionsResolved/index.htm (last visited

12  Mar. 19, 2013) (compilation of acknowledgment decision documents).

13          Finally, the Department argues that the Duwamish failed to raise before the agency their

14  argument that their petition should be considered under both sets of regulations. (No. 77-12,

15  McCune Decl., Ex. V, IBA-RFR-V001-D0008.) "As a general rule, if a petitioner fails to raise

16  an issue before an administrative tribunal, it cannot be raised on appeal from that tribunal." *Reid*

17  *v. Engen*, 765 F.2d 1457, 1460 (9th Cir. 1985). The Ninth Circuit has recognized a number of

18  exceptions to this general rule, which include whether the agency had the power or jurisdiction to

19  decide the issue and whether "exceptional circumstances" warrant review. *Marathon Oil Co. v.*

20  *United States*, 807 F.2d 759, 768 (9th Cir. 1986). In determining whether exceptional

21  circumstances exist, the court "balances the agency's interests in applying its expertise,

22  correcting its own errors, making a proper record, enjoying appropriate independence of decision

23  and maintaining an administrative process free from deliberate flouting, and the interests of

24  private parties in finding adequate redress for their grievances." *Geo-Energy Partners–1983 Ltd.*

25  *v. Salazar*, 613 F.3d 946, 959 (9th Cir. 2010) (quoting *Litton Indus., Inc. v. FTC*, 676 F.2d 364,

26  369–70 (9th Cir. 1982)).

1   　　　The Duwamish argue that they were not required to raise their argument regarding the

2   agency's failure to consider their petition under both sets of guidelines because the IBIA would

3   not have had jurisdiction over that claim. The Duwamish rely on the regulations governing

4   appeals of acknowledgment decisions to the IBIA. *See* 25 C.F.R. § 83.11. Those regulations

5   grant the Board authority to review claims: (1) that there is new evidence that could affect the

6   final determination; (2) that the evidence relied on in the final determination was unreliable or of

7   little probative value; (3) that the research on the petition was incomplete in some material

8   regard; or (4) that there are reasonable alternative interpretations of the evidence that would

9   substantially affect the determination as to whether the mandatory acknowledgment criteria are

10  met. *Id.* § 83.11(d). The Duwamish are correct that their claim regarding consideration under

11  both sets of regulations does not appear to fit within the IBIA's authority. The IBIA, however,

12  can refer to the Secretary of the Interior "other grounds for reconsideration." *Id.* § 83.11(f)(2). In

13  light of this provision, the Court does not agree that the Duwamish were excused from raising

14  their claims before the agency because they fell outside the jurisdiction of the IBIA. The

15  Secretary could have accepted the Duwamish's argument as a basis to refer the Final

16  Determination to the Assistant Secretary for reconsideration.

17  　　　The Duwamish also argue that their failure to raise their claim before the agency should

18  be excused because exceptional circumstances are present in this case. The Court agrees. As

19  previously discussed, the Department's decision not to acknowledge the Duwamish is an

20  extremely weighty one for the Duwamish people. Moreover, concerns about the basis for the

21  Department's acknowledgment decisions have plagued the process and undermined confidence

22  in that process. *See* U.S. Gen. Accounting Office, Report to Cong. Requesters, Indian Issues:

23  Improvements Needed in Tribal Recognition Process, GAO-02-49 at 14, 19 (Nov. 2001). The

24  Department itself recognized that issuing its reconsidered decision on the Chinook petition under

25  both sets of regulations would provide "clear analysis" of how the issues referred to the Assistant

26  Secretary on reconsideration would "be addressed under both sets of regulations." Chinook RFD

ORDER GRANTING PLAINTIFFS' MOTION FOR
SUMMARY JUDGMENT ON FIRST CAUSE OF
ACTION
PAGE - 17

1   at 18. The Department noted that analysis under both sets of guidelines was beneficial to the

2   Chinook and other tribes interested in the resolution of the petition. Chinook RFD at 18. The

3   Duwamish and other tribes engaged in the acknowledgment process would similarly benefit from

4   analysis of the Duwamish petition under both sets of regulations. Short of that, the Duwamish

5   would benefit from clear explanation for the Department's handling the Duwamish petition

6   differently from the Chinook petition.

7          The Court concludes that the interests of the Duwamish in a transparent resolution of

8   their petition outweigh the Department's interest in having the first opportunity to correct an

9   alleged error, which is one of the primary purposes of the exhaustion rule. The Department's

10  interest carries limited weight because the Anderson Decision considered the Duwamish petition

11  under both the 1978 and 1994 regulations. Whatever the significance of that document, it clearly

12  gave decision makers in the Department notice that consideration of the Duwamish petition

13  under both sets of regulations might be appropriate. When Assistant Secretary McCaleb decided

14  to decline to acknowledge the Duwamish under the 1978 regulations, and not to evaluate their

15  petition under the 1994 regulations, he could have, and should have, given a reason for doing so.

16         The Department's failure to either consider the Duwamish petition under both sets of

17  guidelines, or provide some explanation for its differing treatment of the Duwamish and Chinook

18  petitions, violated fundamental norms of administrative procedure and was arbitrary and

19  capricious. The Court has not considered whether the Department's determination on the merits

20  of the Duwamish petition was supported by substantial evidence. Consideration of that question

21  is unnecessary in light of the Court's resolution of this matter on the Duwamish's first cause of

22  action.

23  **III.    CONCLUSION**

24         For the foregoing reasons, Plaintiffs' motion for summary judgment on their first cause of

25  action (Dkt. No. 68) is GRANTED. The Department's Final Determination declining to

26  acknowledge the Duwamish is VACATED and this matter is REMANDED to the Department of

ORDER GRANTING PLAINTIFFS' MOTION FOR
SUMMARY JUDGMENT ON FIRST CAUSE OF
ACTION
PAGE - 18

1   the Interior to either consider the Duwamish petition under the 1994 acknowledgment

2   regulations or explain why it declines to do so. Defendants' cross-motion for summary judgment

3   (Dkt. No. 76) and Plaintiffs' motion for summary judgment on their second and third causes of

4   action (Dkt. No. 96) are DENIED as moot.

5        DATED this 22nd day of March 2013.

6

7

8

9

10

11   _____

12   John C. Coughenour
     UNITED STATES DISTRICT JUDGE

13

14

15

16

17

18

19

20

21

22

23

24

25

26

ORDER GRANTING PLAINTIFFS' MOTION FOR
SUMMARY JUDGMENT ON FIRST CAUSE OF
ACTION
PAGE - 19